MARK HORENIAN *v.* MARCEL D.
WASHINGTON ET AL.*
(AC 32281)

Bishop, Bear and Lavery, Js.

* The caption of this opinion has been changed to reflect the proper name of the defendant. The plaintiff's initial complaint incorrectly referred to the named defendant as Maurice Washington. The plaintiff's revised complaint correctly identifies the named defendant as Marcel D. Washington and any reference in this opinion to Washington is to Marcel D. Washington.

Argued January 10—officially released April 19, 2011

*Mark Horenian*, pro se, the appellant (plaintiff).

*Catharine H. Freeman*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

LAVERY, J. The plaintiff, Mark Horenian, appeals from the summary judgment rendered by the trial court in favor of the defendants, Marcel D. Washington and the city of Hartford (city), on all six counts of his revised complaint. On appeal, the plaintiff claims that several genuine issues of material fact exist and, therefore, that the court improperly granted the defendants' motion for summary judgment.[1] We dismiss the appeal in part and affirm the judgment of the trial court in part.

The following facts and procedural history, as alleged by the plaintiff and reasonably garnered from the

[1] We note at the outset that the plaintiff's brief fails to comply with the requirements of Practice Book § 67-4. "[W]e will nonetheless review all claims which are fairly presented, or at least, reasonably discernible, upon the record before us." (Internal quotation marks omitted.) *McCook* v. *Whitebirch Construction, LLC*, 117 Conn. App. 320, 322 n.3, 978 A.2d 1150 (2009), cert. denied, 294 Conn. 932, 987 A.2d 1029 (2010).

record, are relevant to our resolution of this appeal. The plaintiff commenced this action on January 9, 2008, against Washington, a patrolman with the Hartford police department (department), and the city, Washington's employer. By way of a six count revised complaint filed on October 17, 2008, the plaintiff alleged several causes of action against both defendants. Against Washington, the plaintiff alleged: intentional infliction of emotional distress in the first count; negligent infliction of emotional distress in the second count; and abuse of process in the third count. Against the city, the plaintiff alleged: intentional infliction of emotional distress in the fourth count; negligent infliction of emotional distress in the fifth count; and intentional infliction of emotional distress in the sixth count.

The revised complaint sets forth the following allegations which form the basis of the plaintiff's claims on appeal. Shortly before midnight on November 26, 2005, the plaintiff was involved in a two vehicle collision near the intersection of Hudson Street and Park Street in Hartford. The plaintiff sustained several injuries as a result of the collision and was taken by ambulance to Hartford Hospital (hospital) for treatment.

The department dispatched Washington to the scene of the collision shortly after the collision occurred. Upon arriving at the scene, Washington immediately launched an investigation. After he had interviewed several witnesses and completed his initial examination of the scene, Washington proceeded to the hospital for the purpose of interviewing the plaintiff.

Upon arriving at the hospital, Washington interviewed the plaintiff as he was lying in bed. Once Washington had completed the interview, he informed the plaintiff that he had determined that the plaintiff had made an improper U-turn immediately before the collision occurred and that the plaintiff was therefore at

fault for the collision. The plaintiff protested and told Washington that certain tire marks existed at the scene of the collision that would demonstrate that Washington's conclusion was incorrect. Washington then left the plaintiff's bedside to investigate further.

Washington returned to the hospital a short time later. Upon entering the plaintiff's room, Washington, "[i]n a great rage and anger," threw a traffic citation onto the plaintiff's chest, told the plaintiff that he should arrest him for lying about the tire marks and departed. The plaintiff was discharged from the hospital several hours later and immediately returned to the scene of the collision.

Upon his return, the plaintiff located the tire marks that he had described to Washington and contacted the department. The plaintiff requested that Washington and a supervising officer return to the scene of the collision so that he could show them the tire marks and prove that his earlier statement to Washington was true. Washington returned to the scene in the company of Sergeant Fernando Rodriguez, Jr., his superior officer. The plaintiff showed Washington and Rodriguez the tire marks and again insisted that Washington's conclusion was incorrect. Thereafter, Rodriguez requested that the plaintiff provide him with his copy of the citation and destroyed it in Washington's presence. Washington, nevertheless, submitted a separate copy of the citation to the department's traffic division for processing.

The plaintiff subsequently was summoned to appear before the trial court in order to answer for the charge of making an improper U-turn in violation of General Statutes § 14-242[2]—the infraction listed on the traffic

[2] General Statutes § 14-242 provides in relevant part: "(a) No person shall turn a vehicle at an intersection unless the vehicle is in a proper position on the highway as required by section 14-241 . . . or otherwise turn a vehicle from a direct course or move right or left upon a highway unless such movement can be made with reasonable safety. No person shall so

citation. Thereafter, the plaintiff contacted the department and requested a copy of the police accident report. After his initial attempts to obtain a copy of the report were unsuccessful, the plaintiff contacted the department's internal affairs division for assistance. The internal affairs division, in turn, contacted Washington, who agreed to place a copy of the report in the plaintiff's mailbox on the morning of December 16, 2005.

At 5:30 a.m. on December 16, 2005, the plaintiff was awakened by the sound of knocking on the front door of his residence. When the plaintiff opened the front door, he saw Washington standing outside. Washington then requested that the plaintiff provide him with certain insurance information and informed the plaintiff that a copy of the accident report was available at the department for his review. When the plaintiff went to the department later that day, however, he was informed that the accident report was unavailable as Washington had not yet submitted it to the department. The state subsequently entered a nolle prosequi as to the charge of making an improper U-turn in violation of § 14-242.

On January 26, 2009, the defendants filed an answer to the plaintiff's revised complaint that effectively denied the material allegations of the complaint, leaving the plaintiff to his proof. The defendants also raised several special defenses, including: failure to state a claim as to counts one, three, four, five and six; qualified immunity pursuant to General Statutes § 52-557n[3] as

turn any vehicle without giving an appropriate signal in the manner provided in section 14-244.

"(b) A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning. . . .

"(g) Violation of any of the provisions of this section shall be an infraction."

[3] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent

to counts two and three; and governmental immunity pursuant to § 52-557n as to counts four, five and six.

On January 19, 2010, the defendants filed a motion for summary judgment in which they claimed that there was no genuine issue of material fact and that they therefore were entitled to judgment as a matter of law. The plaintiff filed an objection to the defendants' summary judgment motion on February 16, 2010. On May 5, 2010, the court granted the defendants' motion in a memorandum of decision and rendered judgment in favor of the defendants on all six counts of the revised complaint. This appeal followed.

As an initial matter, we identify the appropriate standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment

thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568 . . . ."

as a matter of law. . . . Our review of the trial court's decision to grant [the defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010).

I

As a threshold matter, we note, sua sponte, that we lack jurisdiction to review the plaintiff's claims in counts two through six of the revised complaint. The trial court determined that common law and statutory qualified and governmental immunity under § 52-557n shielded the defendants from liability with respect to those claims. Because this determination provides an independent basis for upholding the court's decision granting summary judgment, and the plaintiff does not challenge this determination on appeal, we conclude that the plaintiff's claims as they relate to counts two through six of the revised complaint are moot.

"Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties. . . . Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) *that the*

*determination of the controversy will result in practical relief to the complainant.* . . . *[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.* . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; emphasis in original; internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 555–56, 979 A.2d 469 (2009).

In the present case, the defendants filed an answer in which they denied the material allegations of the plaintiff's revised complaint and asserted six special defenses, two of which are relevant here. First, the defendants alleged that common law and statutory qualified immunity under § 52-557n barred the plaintiff's claims in counts two and three of the revised complaint, which alleged negligent infliction of emotional distress and abuse of process against Washington, respectively. Second, the defendants alleged that common law and statutory governmental immunity under § 52-557n barred the plaintiff's claims in counts four through six of the revised complaint, which alleged intentional, negligent and intentional infliction of emotional distress against the city, respectively.

Our review of the record reveals that the court granted the defendants' motion for summary judgment with respect to the plaintiff's claims in counts two through six of the revised complaint on two independent grounds. First, the court determined that no genuine issue of material fact existed. Second, the court determined that the aforementioned special defenses were applicable and shielded the defendants from liability. The plaintiff does not challenge the court's determination that the defendants were entitled to immunity, only its determination that no genuine issue of material

fact existed. "[W]here alternative grounds found by the reviewing court and unchallenged on appeal would support the trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant." *Green* v. *Yankee Gas Corp.*, 120 Conn. App. 804, 805, 993 A.2d 982 (2010). Accordingly, because we cannot grant the plaintiff any practical relief with respect to his claims as they relate to counts two through six of the revised complaint, we dismiss that portion of the appeal as moot.

## II

Although we conclude that this appeal is moot insofar as it concerns counts two through six of the revised complaint, our inquiry is not at an end. Our review of the record reveals that the trial court granted summary judgment on count one of the revised complaint, which alleged intentional infliction of emotional distress against Washington, solely on the basis of its determination that no genuine issue of material fact existed as to whether Washington's conduct was extreme and outrageous and that the defendants therefore were entitled to judgment as a matter of law. Accordingly, the sole remaining issue on appeal is whether the court properly granted the defendants' motion for summary judgment as to count one of the revised complaint. We conclude that the court properly rendered summary judgment on that count.

"In order to prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) *that the conduct was extreme and outrageous*; (3) that the defendant's conduct was the cause of the plaintiff's distress; and

(4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . [I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. . . .

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; emphasis added; internal quotation marks omitted.) *Stancuna* v. *Schaffer*, 122 Conn. App. 484, 491–93, 998 A.2d 1221 (2010).

Viewing the evidence in the light most favorable to the plaintiff, we conclude, as a matter of law, that Washington's conduct was not extreme and outrageous and thus did not support a cause of action for intentional infliction of emotional distress. As this court recently noted, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) Id., 493.

Accordingly, we conclude that the court did not improperly grant the defendants' motion for summary judgment as to count one of the revised complaint.

The judgment is affirmed as to the granting of the defendants' motion for summary judgment on the first count of the revised complaint. In all other respects, the appeal is dismissed as moot.

In this opinion the other judges concurred.