# MARYANN SHIPMAN v. QUINCY ROBERTS
## (AC 32009)

Harper, Beach and Flynn, Js.

Argued January 10—officially released July 26, 2011

*Tad J. Bistor*, guardian ad litem, for the appellant (minor child).

*Philip Miller*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, former attorney general, for the appellee (state).

HARPER, J. The minor child, through his guardian ad litem,[1] appeals from the judgment of the court affirming the decision of the family support magistrate granting the motion to modify the child support order brought by support enforcement services (support enforcement) on behalf of the defendant father, Quincy Roberts, who is incarcerated. The minor child claims that (1) the trial court improperly concluded that the defendant was entitled to a downward modification of his child support obligation pursuant to General Statutes § 46b-215e, and (2) the trial court improperly declined to apply the deviation criteria set forth in the child support guidelines. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. This matter arises out of a paternity action initiated by the commissioner of social services, on behalf of the plaintiff, MaryAnn Shipman, alleging that the defendant is the father of the minor child. On January 16, 2001, the court rendered a judgment of paternity after genetic test results indicated a 99.99 percent probability of paternity. At the time of the minor child's birth, the defendant was incarcerated after pleading guilty under the *Alford* doctrine[2] to first degree manslaughter and risk of injury to a child for the death of his and the plaintiff's six week old daughter, the full sibling of the minor child.

On September 4, 2001, the family support magistrate, *Harris T. Lifshitz*, entered a child support order of $60 per week, plus $5 per week toward arrears. In accordance with the law at that time, the family support magistrate based the support order on the defendant's

---

[1] The minor child's guardian ad litem is also his attorney.

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

earning capacity, before he was incarcerated, of $8 per hour.

Subsequently, the General Assembly enacted § 46b-215e which provides: "Notwithstanding any provision of the general statutes, whenever a child support obligor is institutionalized or incarcerated, the Superior Court or a family support magistrate shall establish an initial order for current support, or modify an existing order for current support, upon proper motion, based upon the obligor's present income and substantial assets, if any, in accordance with the child support guidelines established pursuant to section 46b-215a. Downward modification of an existing support order based solely on a loss of income due to incarceration or institutionalization shall not be granted in the case of a child support obligor who is incarcerated or institutionalized for an offense against the custodial party or the child subject to such support order."

On September 27, 2007, support enforcement, acting pursuant to General Statutes § 46b-231 (s) (4),[3] filed a motion to modify the defendant's child support obligation under § 46b-215e, citing a change in financial circumstances due to the defendant's incarceration. On

[3] General Statutes § 46-231 (s) provides in relevant part, that "[s]upport enforcement officers of Support Enforcement Services of the Superior Court shall . . . (4) Review child support orders (A) in non-TANF IV-D support cases (i) at the request of either parent or custodial party subject to a support order, or (ii) upon receipt of information indicating a substantial change in circumstances of any party to the support order, (B) in TANF cases, at the request of the Bureau of Child Support Enforcement, or (C) as necessary to comply with federal requirements for the child support enforcement program mandated by Title IV-D of the Social Security Act, and initiate an action before a family support magistrate to modify such support order if it is determined upon such review that the order substantially deviates from the child support guidelines established pursuant to section 46b-215a or 46b-215b. A requesting party under subparagraph (A) (i) or (B) of this subdivision shall have a right to such review every three years without proving a substantial change in circumstances, but more frequent reviews shall be made only if such requesting party demonstrates a substantial change in circumstances. . . ."

April 17, 2008, the family support magistrate, *John E. Colella,* granted support enforcement's motion, modifying the defendant's child support order to zero. Thereafter, the minor child appealed to the Superior Court pursuant to § 46b-231 (n) (7). The court, *J. Fischer, J.,* affirmed the modification of the defendant's child support obligation and adopted Magistrate Colella's written memorandum of decision. This appeal followed.

## I

The minor child claims that Magistrate Colella erred in his interpretation of § 46b-215e, as applied to the facts of this case, and, as such, the trial court improperly rendered judgment affirming the decision of the magistrate. Specifically, the minor child argues that, in granting the modification, the magistrate improperly interpreted the language in § 46b-215e that prohibits downward modification on the basis of incarceration where the obligor is incarcerated for an "offense against the custodial party or the child subject to [the] support order." General Statutes § 46b-215e. The minor child contends that this statutory provision should have been interpreted to prohibit downward modification in the present case, where the obligor was incarcerated for an offense against the daughter of the custodial parent and the sibling of the child subject to the support order.

We begin by setting forth our standard of review. The resolution of this appeal requires us to interpret the language of § 46b-215e. "Well settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the

language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150–51, 12 A.3d 948 (2011). "[I]t is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Jason Robert's, Inc.* v. *Administrator, Unemployment Compensation Act*, 127 Conn. App. 780, 788, 15 A.3d 1145 (2011).

The portion of § 46b-215e in question provides: "Downward modification of an existing support order based solely on a loss of income due to incarceration or institutionalization shall not be granted in the case

of a child support obligor who is incarcerated or institutionalized for an offense against the custodial party or the child subject to such support order." As noted previously, in the present case, the defendant is incarcerated for the criminal offenses of manslaughter and risk of injury to a child for the death of his and the plaintiff's daughter, who was also the minor child's full sibling. The minor child contends that the court erred in not interpreting the term "offense," as it is used in § 46b-215e, as encompassing the emotional harm and loss of consortium of a daughter suffered by the custodial party and of a sister suffered by the minor child in the present case. The minor child asserts that because he and the plaintiff suffered emotional harm due to the offenses, they were also victims of the offenses for which the defendant was incarcerated. Thus, the minor child argues that the court erred by not denying the defendant's motion for modification on the grounds that his incarceration was for an "offense" against the custodial party and the child of the support order; i.e. the plaintiff and the minor child, respectively. We are not persuaded.

We conclude that, when read in context, the plain and unambiguous meaning of the term "offense" as it is used in § 46b-215e, refers to the criminal offenses for which the obligor is incarcerated or institutionalized. Such an interpretation is consistent with the plain meaning of the term as well as the meaning our Supreme Court has assigned to it in other statutory contexts. See *McCoy* v. *Commissioner of Public Safety*, supra, 300 Conn. 178 (interpreting term "offense" in General Statutes § 14-227a as synonymous with "criminal offense"). In the present case, the obligor is incarcerated for the criminal offenses of manslaughter and risk of injury to a child: offenses against the child who was killed. The deceased child is not the subject of the support order nor is she the custodial party. Although we certainly agree with the minor child that the defendant's conduct

was traumatizing to the plaintiff and the minor child, they were not the victims of the criminal offenses for which the defendant is incarcerated. Thus, the court properly determined that § 46b-215e does not bar a modification of the defendant's child support obligation.[4]

[4] The minor child also asserts that the court erred by "not expanding [the] application of the statute to include offenses committed against immediate family members of the custodial party . . . ." We do not agree. It is not the role of the court to add provisions to a statute or to expand its scope beyond that which is provided for in the text of the statute itself. See, e.g., *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 186, 801 A.2d 783 (2002) ("[i]t is not the function of the courts to enhance or supplement a statute containing clearly expressed language"). Had the legislature intended to bar modification of child support under § 46b-215e when the obligor is incarcerated for an offense committed against the immediate family member of the custodial party, it could have so provided. It is not the role of this court to read such a provision into the statute.

Additionally, the minor child contends that the magistrate "erred in his application of the twin policy goals underlying the enactment of . . . § 46b-215e to the facts of the case." The minor child bases his argument on the Superior Court case of *Perez* v. *Beaulieu*, Superior Court, judicial district of Waterbury, Docket No. FA-91-0105291-S, 2006 Conn. Super. LEXIS 2800 (September 6, 2006), which he contends "requires that all modification requests brought pursuant to . . . § 46b-215e must meet the twin policy goals underlying the enactment of . . . § 46b-215e, namely the avoidance of a large, uncollectable arrearage that is impossible to pay off, and the negative impact that an unrealistic arrearage has on the establishment of a parent-child relationship." This argument is unpersuasive for several reasons. First, case law from the Superior Court is not binding on this court; see, e.g., *Lucien* v. *McCormick Construction, LLC*, 122 Conn. App. 295, 303 n.6, 998 A.2d 250 (2010); and the minor child has not cited any other authority for the proposition that such a requirement exists, nor have we been able to locate any. Moreover, the minor child's assertion that *Perez* stands for such a proposition is, at best, a strained reading of the case. The court in *Perez* examined the twin policy goals underlying § 46b-215e in the context of determining whether the " '[o]ther equitable factors' " deviation criteria should be applied to deviate from the guidelines amount. *Perez* v. *Beaulieu*, supra, 2006 Conn. Super. LEXIS, *8–9. Thus, the court did not, as the minor child contends, hold that all modifications under § 46b-215e must meet the twin policy goals underlying the enactment of the statute. Rather, the court acknowledged that whether those goals were met was a relevant inquiry in determining if other equitable factors existed such that deviation from the guidelines was warranted. Id., *15. Finally, in the present case, the magistrate addressed the policy goals underlying § 46b-215e when considering the motion to modify and concluded that denying the modification "would result in a large uncollectable arrearage." Therefore, the magistrate specifically

## II

The minor child's next claim is that the magistrate erred by not applying the deviation criteria set forth in the child support guidelines when ruling on a motion to modify a child support order brought under § 46b-215e.[5] We are not persuaded.

Section 46b-215e provides in relevant part that, upon a proper motion, the child support order for an incarcerated obligor shall be modified "based upon the obligor's present income and substantial assets, if any, *in accordance with the child support guidelines . . . .*" (Emphasis added.) The child support guidelines set forth several criteria by which a court may deviate from the presumptive child support amount provided for in the guidelines. See Regs., Conn. State Agencies § 46b-215a-3. Section 46b-215a-3 (b) (6) of the Regulations of Connecticut State Agencies provides in relevant part that: "In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from the presumptive support amounts may be warranted for reasons of equity. . . ." Included among the enumerated categories of special circumstances which support deviation from the guidelines is the category of "[o]ther equitable factors." See Regs., Conn. State Agencies § 46b-215a-3 (b) (6) (D).

When arguing the motion for modification before Magistrate Colella, the minor child asserted that the magistrate should deviate from the presumptive support amount based on the "[o]ther equitable factors"

found that granting the modification met the policy goals underlying § 46b-215e. The minor child does not challenge this finding as clearly erroneous but, rather, reiterates the argument he made before the trial court as to why he believes the policy goals are not met in the present case. For these reasons, we find the minor child's argument unpersuasive.

[5] Contrary to its position before the trial court, on appeal, support enforcement now agrees with the minor child that the court is not prohibited from considering the deviation criteria set forth in the guidelines when ruling on a motion to modify a child support order brought pursuant to § 46b-215e.

deviation criteria. In his written memorandum of decision, which was adopted by the trial court, Magistrate Colella addressed this argument as follows: "Child support guidelines [Regs., Conn. State Agencies] § 46b-215a-3 sets forth several criteria for deviation from presumptive support amounts. The [minor child] . . . argues that the court should apply the 'other equitable factors' deviation criteria as a basis to deny the modification or set a lower order for child support. However this argument is not persuasive. Firstly, as pointed out by the [state], this catch-all deviation criterion must be applied sparingly, so as not to 'create an exception that will swallow the rule.' *Favrow* v. *Vargas*, 222 Conn. 699 [610 A.2d 1267] (1992). More importantly, as also pointed out by the state, the specificity of the language of § 46b-215e supersedes the more general provisions of this deviation criterion."

Although the minor child states his claim of error in broad terms, a careful review of his brief indicates that it is devoid of any assertion that the magistrate abused his discretion in declining to deviate from the guidelines amount based on the facts of the case. Rather, the minor child analyzes his claim solely in terms of statutory interpretation, arguing that the magistrate improperly concluded that § 46b-215e prohibited consideration of the deviation criteria set forth in the child support guidelines. Thus, the minor child's claim is premised on the assumption that the magistrate's ruling was based entirely on his conclusion that, as a matter of law, § 46b-215e precluded consideration of the deviation criteria of the guidelines. Our review of the language of the magistrate's order, however, indicates that he provided two independent justifications for his decision, only one of which involves a matter of statutory interpretation.

"The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . .

As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.) *Eberhart* v. *Meadow Haven, Inc.*, 111 Conn. App. 636, 647, 960 A.2d 1083 (2008).

In his written memorandum of decision, which was adopted by the trial court, the magistrate provided two bases for his decision not to deviate from the guidelines amount. First, the magistrate declined to apply the deviation criterion because "this catch-all deviation criterion must be applied sparingly, so as not to 'create an exception that will swallow the rule.' " We construe this portion of the decision to indicate that the magistrate exercised his discretion and determined that the facts of this particular case did not warrant the sparing application of the "[o]ther equitable factors" deviation criteria. As an additional reason for declining to apply the deviation criteria, Magistrate Colella stated: "[T]he specificity of the language of § 46b-215e supersedes the more general provisions of this deviation criterion." Although not entirely clear, this portion of the decision could be construed, as the minor child contends, as the magistrate's conclusion that the specific language of § 46b-215e prohibited application of the guidelines criteria. Even if we were to construe the decision in that manner and conclude, as the minor child argues, that the magistrate erred in interpreting § 46b-215e as prohibiting deviation from the guidelines criteria, there remains an independent and unchallenged basis for the magistrate's decision; namely, his conclusion that, in the exercise of his broad discretion, the facts of the present case did not warrant application of the "[o]ther equitable factors" deviation criterion.

"[W]here alternative grounds found by the reviewing court and unchallenged on appeal would support the

trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant." (Internal quotation marks omitted.) *Horenian* v. *Washington*, 128 Conn. App. 91, 99, 15 A.3d 1194 (2011). On appeal the minor child does not allege that the magistrate abused his broad discretion in concluding that the facts of this case did not warrant application of the deviation criteria. Because there is an unchallenged ground that would support his decision, we can grant no practical relief to the minor child on his claim that the magistrate erred in his interpretation of § 46b-215e.

The appeal is dismissed as moot only as to the claim that the magistrate erred in not applying the deviation criteria set forth in the child support guidelines. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.