******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RONALD M. BOMBERO *v.* STEPHEN C. BOMBERO

STEPHEN C. BOMBERO *v.* RONALD M.
BOMBERO ET AL.
(AC 35168)

RONALD M. BOMBERO *v.* STEPHEN C. BOMBERO
(AC 35822)

DiPentima, C. J., and Keller and Norcott, Js.

*Argued February 19—officially released September 29, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. Howard T. Owens, Jr., judge trial referee
[summary judgment; motion for attorney's fees];
Radcliffe, J. [strict foreclosure].)

*Hugh D. Hughes*, with whom, on the brief, was *Steven
M. Reilly*, for the appellant (defendant in the first case,
plaintiff in the second case).

*Elaine K. Stuhlman*, for the appellee (plaintiff in the
first case, defendants in the second case).

*Opinion*

DiPENTIMA, C. J. At the nucleus of these consolidated and amended appeals is a monetary dispute between two brothers. In AC 35168, the defendant, Stephen C. Bombero, appeals from the judgment rendered in favor of the plaintiff, Ronald M. Bombero, as to the plaintiff's complaint, seeking the foreclosure of a note and the reformation of a mortgage release, and granting the plaintiff's motion for summary judgment on the defendant's counterclaim.[1] In AC 35822, the defendant appeals from the judgment of strict foreclosure rendered in favor of the plaintiff; an amended appeal, designated AC 35822xA01, was filed challenging the court's subsequent decision to award attorney's fees to the plaintiff. We conclude that the court improperly rendered judgment in favor of the plaintiff on his complaint and, therefore, remand that portion of the case for further proceedings. We dismiss the appeal from the judgment rendered in favor of the plaintiff with respect to the counterclaim.

The record reveals the facts and procedural history that are both confusing and protracted. We set forth only the relevant details that are necessary to the resolution of these appeals. On April 11, 2000, the plaintiff and the defendant executed a promissory note, payable on demand, in the amount of $79,116.50. As security, the defendant mortgaged his one-third interest in property located at 151 Booth Hill Road in Trumbull to the plaintiff. The defendant agreed to pay one third of the taxes on this property. On May 2, 2007, the plaintiff made a written demand for payment of the note. After the defendant failed to make the required payment, the plaintiff commenced a one count foreclosure action on September 6, 2007, alleging that the defendant was in default.

On October 30, 2007, the defendant filed an answer and raised five special defenses: Payment of the note; the plaintiff's failure to comply with the covenants of good faith and fair dealing by commencing a foreclosure action after receiving full payment of the note; release and discharge of the mortgage following payment of the note; the plaintiff's inequitable conduct in bringing a foreclosure action after payment of the note and release and discharge of the mortgage; and the statute of limitation as set forth in General Statutes § 52-576.[2] The plaintiff denied the defendant's special defenses on August 25, 2010.

On July 28, 2008, the defendant commenced a civil action against the plaintiff and certain other parties. See *Bombero* v. *Bombero*, Superior Court, judicial district of Fairfield, Docket No. CV-08-5017758-S. In that case, the defendant sought a partition of 151 Booth Hill Road and a sale of that property. On May 4, 2010, the court granted the plaintiff's motion to consolidate his foreclo-

sure action with the defendant's partition action.

The plaintiff amended his foreclosure complaint, adding a count for reformation on August 31, 2010. In this count, the plaintiff alleged that on April 11, 2000, the defendant was indebted to the plaintiff in the amount of $79,116.50 and that this debt was secured by a mortgage of the defendant's one-third interest in 151 Booth Hill Road.[3] The plaintiff further claimed that in June, 2000, the defendant executed a second note to the plaintiff in the amount of $85,000. This second note was due and payable upon the sale of the defendant's residence at 101 Golden Hill Street in Trumbull. The defendant gave the plaintiff a mortgage on the 101 Golden Hill Street property to secure the $85,000 note, which was recorded on the Trumbull land records. The defendant sold the 101 Golden Hill Street property on August 22, 2000, and paid the plaintiff $81.476.86. Approximately one week later, the plaintiff went to the office of the defendant's attorney, Serge Mihaly, to sign a release of the mortgage on the 101 Golden Hill Street property.

The plaintiff claimed that Mihaly, either mistakenly or under the direction of the defendant, listed the mortgage on the 151 Booth Hill Road property, rather than the 101 Golden Hill Street property, on the release signed by the plaintiff. The plaintiff further alleged that the defendant knew of the plaintiff's mistake and allowed the erroneous release to be recorded on the land records in an attempt to defraud the plaintiff. The plaintiff, therefore, sought to have the court reform the release to reflect a release of the mortgage on 101 Golden Hill Street and to reinstate the mortgage on 151 Booth Hill Road. In the plaintiff's demand for relief, he requested a foreclosure of the 151 Booth Hill Road mortgage, immediate possession of 151 Booth Hill Road, attorney's fees, costs of collection, interest pursuant to General Statutes § 37-3a, one-third share of property taxes, a deficiency judgment against the defendant, damages, a reformation of the release signed by the plaintiff, and any further equitable relief.

On October 27, 2011, the defendant filed an answer to the plaintiff's amended complaint. He maintained his five special defenses as to count one of the amended complaint. The defendant also raised special defenses as to count two: Statute of limitations, as set forth in General Statutes § 42a-3-118;[4] the doctrine of laches; and setoff.[5] The defendant also filed a two count counterclaim as to the second count of the plaintiff's complaint. First, the defendant alleged that he was entitled to a setoff, pursuant to § 52-404,[6] as a result of the plaintiff's occupancy of the 151 Booth Hill Road property. In the second count of his counterclaim, the defendant claimed that he was entitled to a setoff for his contribution to joint projects with the plaintiff for which he was not reimbursed, unpaid loans made to the plaintiff, the loss of his rightful inheritance from his mother

as a result of contributions made by her and not reimbursed by the plaintiff and profits from joint projects that were not paid to the defendant by the plaintiff. The defendant sought damages exceeding $15,000. On February 27, 2012, the plaintiff filed a responsive pleading to the counterclaim.

On November 7, 2011, the trial commenced.[7] On April 23, 2012, while the plaintiff was presenting his evidence on the complaint, the court granted the plaintiff permission to file a motion for summary judgment as to the defendant's counterclaim to the reformation count of the plaintiff's amended complaint. On May 14, 2012, the plaintiff moved for summary judgment. Specifically, he argued that neither of the counts in the defendant's counterclaim arose from the same transaction that was the subject of the plaintiff's complaint, neither count arose from the making, validity or enforcement of the note and mortgage contained in the plaintiff's complaint and the counterclaim was barred by the statute of limitations.[8] The defendant filed a motion for an extension of time to respond on May 6, 2012, which was granted until May 25, 2012. Two additional extensions were sought by the defendant, but not acted upon by the court.

On July 31, 2012, without any objection to the motion being filed, the court issued a memorandum of decision granting the plaintiff's motion for summary judgment. It concluded that both counts of the defendant's counterclaim, seeking a setoff, did not relate to the making, validity or enforcement of the note and mortgage or the claim for a reformation of the mortgage release, and therefore were improper. It also determined that the defendant had failed to establish the nature of the alleged debts claimed by the defendant and therefore the defendant had failed to demonstrate his right to a setoff in the pleadings. Finally, it determined that many of the allegations in the counterclaim were barred by the applicable statutes of limitations. The court rendered judgment in favor of the plaintiff with respect to the defendant's counterclaim. The court, sua sponte, also rendered judgment in favor of the plaintiff as to the complaint. In other words, the court rendered a judgment on the plaintiff's foreclosure and reformation action, as well as the defendant's counterclaim for a setoff.[9] No judgment was rendered on the separate partition action that had been commenced by the defendant and consolidated with the action initiated by the plaintiff.

On August 8, 2012, the defendant filed a motion to open and to set aside the judgment. He argued that the court decided the plaintiff's motion without receiving the defendant's objection, failed to address the standard of proof, and ruled on both the motion for summary judgment and the trial on the merits. He further claimed that the court did not address the issue of reformation

and failed to hear all the evidence. The plaintiff filed an objection to the motion to open, which the court sustained on October 24, 2012. During these proceedings, no judgment was rendered or order made regarding the partition action.

On November 2, 2012, the defendant filed an appeal, designated as AC 35168, from the judgment rendered on the plaintiff's complaint and the defendant's counterclaim. The defendant referred to the partition action when he filed his appeal.

On November 30, 2012, the plaintiff moved to dismiss the appeal for lack of a final judgment because the court had not determined the method of foreclosure, the amount of debt and the value of the equity in the property.[10] The plaintiff further contended that the court had not entered any orders or rendered a judgment regarding the partition action. As a result, the plaintiff maintained that the appeal should be dismissed for a lack of a final judgment. We granted the plaintiff's motion and dismissed the appeal as it pertained to the foreclosure count and the partition action. We further concluded that the appeal from the judgment on the defendant's counterclaim and the denial of the motion to open the judgment, to the extent it challenged the judgment on that counterclaim, remained pending.

On June 6, 2013, the court, *Radcliffe, J.*, granted the plaintiff's motion for a judgment of strict foreclosure, found the debt to be $200,213.17, and the fair market value of the property to be $126,000 and set the law day for October 1, 2013. On July 5, 2013, the defendant filed an appeal, designated as AC 35822, from the judgment of strict foreclosure.[11] The two appeals were consolidated.

On July 24, 2013, the court, *Hon. Howard T. Owens, Jr.*, judge trial referee, granted the plaintiff's motion for attorney's fees in the amount of $90,301. On August 6, 2013, the defendant filed an amended appeal in AC 35822 from the order of the trial court awarding attorney's fees to the plaintiff's counsel.

After oral argument in these appeals, we ordered the court, sua sponte, to articulate the factual and legal basis underlying its decision to enter judgment for the plaintiff on his complaint.[12] On May 15, 2015, the court responded to our order as follows: "The legal basis for its ruling is that the defendant failed to prove that the alleged debt from the defendant . . . did not arise from the execution or reformation of the release or even from the making, validity or enforcement of the note but arose independently from the transaction and this if proved would be a claim for setoff. In order to prevail by way of counterclaim the defendant's allegations must arise out of the transaction or one of the transactions which is the subject of the plaintiff's complaint. . . . The special defenses and counterclaim do not relate to

the making, validity or enforcement of the note and thus are invalid."

Before addressing the specific claims of the defendant in this appeal, we set forth the relevant legal principles and our standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary. (Citation omitted; internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 228, 116 A.3d 297 (2015); see also *Townsend* v. *Sterling*, 157 Conn. App. 708, 717, 116 A.3d 873 (2015) ("[o]n appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court" [internal quotation marks omitted]).

I

We first consider the defendant's claim that the court improperly rendered judgment for the plaintiff with respect to the complaint. The defendant sets forth a number of arguments to support his claim.[13] We agree with the defendant that the court improperly rendered judgment in favor of the plaintiff with respect to the complaint because that issue was outside the scope of the motion for summary judgment filed by the plaintiff. The motion for summary judgment was limited to the defendant's counterclaims, and it was improper for the court to render a judgment on the complaint. We therefore reverse the judgment of strict foreclosure and the award of attorney's fees in appeals designated AC 35822 and AC 35822x01.

Additional facts are necessary for the resolution of this issue. During the trial, on April 23, 2012, the parties and the court discussed in chambers certain procedural questions. A discussion on the record followed, and the court expressly granted permission to the plaintiff to file a motion for summary judgment with respect to certain aspects of the case. The court then proceeded to hear additional evidence on the plaintiff's complaint.

The plaintiff directed his May 14, 2012 motion for summary judgment solely at the defendant's counterclaim to the second count of the complaint, which sought a reformation of the mortgage release. He further argued: "1. Neither the First nor the Second Counts of the Defendant's Counterclaim arise from the same transaction which is the subject of the Plaintiff's Complaint; 2. Neither the First nor the Second Counts of the Defendant's Counterclaim arises from the making, validity or enforcement of the Note and Mortgage, subject of the Plaintiff's Complaint; [and] 3. All of the claims alleged in the Defendant's Counterclaim are barred by the Statutes of Limitations contained in . . . General Statutes §§ 52-576, 42a-3-118, 45a-375 and/or the Statute of Frauds contained in . . . General Statutes § 52-550." Further, the motion concluded as follows: "As all more specifically set forth in the Plaintiff's Memorandum in Support of Motion for Summary Judgment as to Defendant's Counterclaim to Second Count attached hereto and incorporated by reference herewith." The plaintiff's memorandum of law did not seek a judgment as to the complaint, and concluded as follows: "[T]he Court should grant the Plaintiff's Motion for Summary Judgment on the Defendant's Counterclaim to the Second Count."

In the court's memorandum of decision, it noted that the plaintiff had moved for summary judgment as to the defendant's counterclaim to the second count. The court granted the plaintiff's motion, but rendered judgment for the plaintiff on both the complaint and the counterclaim.[14] On August 8, 2012, the defendant moved to open and set aside the judgment. He noted that the court ruled on the complaint, which was beyond the scope of the defendant's motion for summary judgment.

On appeal, the defendant argues that the court improperly rendered judgment on the plaintiff's complaint. Specifically, he contends that "[i]t was a huge surprise that the court . . . proceeded to grant judgment on the plaintiff's complaint . . . ." We agree that the court improperly rendered judgment on the plaintiff's claim when the plaintiff's motion for summary judgment was limited to the defendant's counterclaim.

We recently held that a trial court lacks authority to render summary judgment on grounds not raised or briefed by the parties that do not involve the court's

subject matter jurisdiction. *Greene* v. *Keating*, 156 Conn. App. 854, 860, 115 A.3d 512 (2015). In that case, the parties filed cross motions for summary judgment regarding the plaintiff's action for vexatious litigation. Id., 858. In granting the defendant's motion for summary judgment, the trial court determined that General Statutes § 52-568 set forth two distinct causes of action under subdivisions (1) and (2), the plaintiff's complaint alleged an action only under subdivision (2), which contains an element of malice, and because the plaintiff had failed to offer any support for the allegation of malice, the defendant was entitled to judgment as a matter of law. Id., 859.

On appeal, the plaintiff claimed that the court acted outside its authority in rendering summary judgment on a ground neither raised nor briefed by the parties. Id., 860. In agreeing with the plaintiff we first noted that a court generally is limited to adjudicating issues raised by the parties. Id. We further explained that neither party raised any issue regarding the plaintiff's allegation of malice. Id., 861. "Accordingly, we conclude, under the facts of this case, that the court acted in excess of its authority when it raised and considered, sua sponte, a ground for summary judgment not raised or brief by the parties." Id.

We also are guided by our decision in *Miller* v. *Bourgoin*, 28 Conn. App. 491, 613 A.2d 292, cert. denied, 223 Conn. 927, 614 A.2d 825 (1992). In that case, the parties entered into a contract whereby the plaintiffs would purchase a building lot and house that would be constructed by the defendants. Id., 492. The plaintiffs terminated the contract on the basis that the defendants failed to complete the house in a timely manner. Id., 493. They commenced an action to recover their deposit, alleging breach of contract and a violation of General Statutes § 42-110b of the Connecticut Unfair Trade Practices Act. Id., 493–94. The defendant filed an answer and special defenses, as well as a two count counterclaim to recover the difference between the contract price and the actual selling price. Id., 494. The plaintiffs moved for summary judgment on the complaint. Id. The court rendered judgment on the complaint and the counterclaim. Id.

We first determined that the court improperly had rendered summary judgment in favor of the plaintiffs with respect to the complaint. Id., 499. We then considered the defendants' claim that the court improperly had granted summary judgment with respect to the counterclaim. Id. "The plaintiffs' motion for summary judgment was directed solely to the complaint. *Neither party had filed a motion for summary judgment on the counterclaim and neither party had notice that the counterclaim was at issue. In that situation,* [a] *court may not grant summary judgment sua sponte. . . . The issue first must be raised by the motion of a party*

and supported by affidavits, documents or other forms of proof." (Emphasis added; internal quotation marks omitted.) Id., 499–500. We concluded by stating that the "trial court was without authority to grant summary judgment on the counterclaim." Id., 500.

Our decision in *Miller* was based on *Cummings & Lockwood* v. *Gray*, 26 Conn. App. 293, 600 A.2d 1040 (1991). In that case, the plaintiff commenced an action for unpaid legal services. Id., 294–95. The defendants filed an answer, special defenses and a counterclaim alleging damages for legal malpractice. Id., 295. After the pleadings were closed, the plaintiff moved for summary judgment, which the court granted and rendered judgment in favor of the plaintiff on both the complaint and the counterclaim. Id., 295–96. We concluded that the court improperly rendered judgment on the counterclaim. Id., 299. We reasoned that a court could not grant summary judgment sua sponte; the issue needed to be raised by a party. Id. The plaintiff expressly had moved for summary judgment only as to the complaint. Id. We further stated that "a party seeking summary judgment on both a complaint and a counterclaim must file an appropriate motion addressed to each [pleading]." Id.; cf. *Dime Savings Bank of New York, F.S.B.* v. *Wu*, 34 Conn. App. 901, 902, 640 A.2d 164 (plaintiff made general motion for summary judgment which allowed court to render judgment on both complaint and counterclaim), cert. denied, 229 Conn. 924, 642 A.2d 1213 (1994).

As demonstrated by these cases, it was improper for the trial court in the present case to render judgment for the plaintiff on the complaint. The plaintiff never requested that judgment be rendered on his complaint. Both his motion and memorandum of law in support were limited to the counterclaim and set forth no arguments directed to the complaint. The defendant, therefore, was deprived of the opportunity to present any evidence or argument as to why summary judgment was not warranted on the complaint.[15] Because the question of whether summary judgment on the complaint was not raised by a party and supported by proof, we conclude that the court erroneously rendered a judgment, sua sponte, in favor of the plaintiff on his complaint. Because the judgment of strict foreclosure and subsequent award of attorney's fees relied on the summary judgment rendered on the complaint, those judgments cannot stand.

## II

We now consider the defendant's claim that the court improperly rendered summary judgment in favor of the plaintiff with respect to the counterclaim. The defendant argues that the court improperly prevented him from presenting evidence that the plaintiff owed the defendant "a great deal of money on other partnership ventures . . . ." Distilled to its essence, the defendant

contends that the court improperly rendered summary judgment on the counterclaim on the basis that it did not arise out of the same transaction that was the subject of the complaint. We conclude that the defendant failed to address the court's alternative bases for granting summary judgment, that the counterclaim was legally insufficient and was barred by the applicable statutes of limitation. Accordingly, because we cannot afford the defendant any practical relief, this claim is moot.

"Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties. . . . Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) *that the determination of the controversy will result in practical relief to the complainant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow* . . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Emphasis in original; internal quotation marks omitted.) *Horenian* v. *Washington*, 128 Conn. App. 91, 97–98, 15 A.3d 1194 (2011).

As stated previously, the defendant filed a two count counterclaim directed at the plaintiff's reformation cause of action. In count one of the counterclaim, the defendant alleged that the plaintiff was indebted to him and that he had a claim of damages pursuant to § 52-404.[16] In count two of the counterclaim, the defendant alleged that he was entitled to damages because the plaintiff was "indebted to [him] in a sum much larger than any damage claim asserted in the case . . . ." The defendant specifically referenced his contributions to joint ventures with the plaintiff for which he had not been reimbursed, loans he had made to the plaintiff for which he had not been reimbursed, contributions made by the mother of the parties to joint projects that the plaintiff had not repaid, causing the defendant to be deprived of his "rightful inheritance" and profits from joint projects for which the defendant had not been paid.

In granting the plaintiff's motion for summary judg-

ment, the court first determined that the two counts of the counterclaim did not arise out of the transaction that was the subject of the plaintiff's complaint,[17] and therefore needed to be brought as a separate action. It also concluded that the counterclaim, which was based on "unspecified agreements and undetermined amounts allegedly owed to the defendant from the plaintiff" failed to "affirmatively and adequately" allege a claim for a setoff, pursuant to General Statutes § 52-139.[18] It explained that "[t]his court is left to guess what specific debts are alleged to be due and legally enforceable against the plaintiff, when such debts arose, whether these obligations arose out of contract, and if so, what were the relevant terms of the contract, whether therefore, the plaintiff has any defenses to such claims, i.e. statutes of limitations, statutes of fraud, etc.; in short what are the issues to be tried?"[19] Finally, the court reasoned that because it was undisputed that all of the defendant's purported loans or contributions to joint ventures or projects were completed before December 3, 2002, his counterclaim was barred by the statute of limitations.[20]

In his appellate brief, the defendant did not address the court's conclusion that his counterclaim failed to properly allege a claim of setoff or that his counterclaim was barred by the statute of limitations. These determinations by the court provide independent bases for upholding the judgment rendered in favor of the plaintiff on the counterclaim. "[W]here alternative grounds found by the reviewing court and unchallenged on appeal would support the trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant." (Internal quotation marks omitted.) *Horenian* v. *Washington*, supra, 128 Conn. App. 99. Accordingly, we dismiss this portion of the defendant's appeal as moot.

In AC 35822 and 35822xA01, the judgment on the plaintiff's complaint, the judgment of strict foreclosure, and the award of attorney's fees are reversed and the case is remanded for further proceedings according to law. In AC 35168, the appeal from the judgment in favor of the plaintiff on the defendant's counterclaim is dismissed.

In this opinion the other judges concurred.

[1] As we discuss later in this opinion, the defendant filed a separate action against the plaintiff and Thomas F. Bombero, trustee of the Thomas F. Bombero Revocable Trust Agreement. The plaintiff, the defendant and Thomas F. Bombero each owned a one-third interest in the property located at 151 Booth Hill Road in Trumbull. The defendant also named Francis Bombero, the wife of the plaintiff, and Ronald M. Bombero, Jr., the son of the plaintiff, and the United States of America as defendants in this action. The defendant sought a partition of 151 Booth Hill Road, a sale of that property in accordance with General Statutes § 52-500, a division of the assets, the appointment of a committee to make such a sale and any other relief to which he was entitled. The plaintiff, with the other parties, filed an answer, special defenses and counterclaim to the defendant's partition

action.

The partition action was consolidated with the plaintiff's foreclosure action at the trial court. The trial court subsequently rendered judgment on the plaintiff's complaint and the defendant's counterclaim, but never addressed the partition action. On his appeal form, the defendant indicated that his appeal included the partition action. In his appellate brief, the defendant contends that the court rendered judgment on the partition action. We granted the plaintiff's motion to dismiss the appeal as to the partition action for lack of a final judgment. Our review of the record reveals that the court never rendered a judgment with respect to the partition action.

[2] As noted by the trial court "[e]ach of the defendant's five special defenses was based on the defendant's allegations that the subject note was paid in full by the defendant and that the plaintiff had executed a release of the mortgage securing the note."

[3] The plaintiff, the defendant and a third brother, Thomas F. Bombero, each owned a one-third interest in 151 Booth Hill Road.

[4] General Statutes § 42a-3-118 (a) provides: "Except as provided in subsection (e), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

[5] The defendant claimed in his third special defense that he was entitled to a setoff for the plaintiff's occupancy of 151 Booth Hill Road. In his fourth special defense, the defendant claimed a setoff for his contribution to joint projects with the plaintiff for which no reimbursement had been made, loans he made to the plaintiff for which he received no reimbursement, contributions made by Emma Bombero, the mother of the parties, that were not repaid and therefore deprived the defendant of part of his inheritance, and for profits owed to the defendant from joint projects that he did not receive.

[6] General Statutes § 52-404 provides: "(a) A residuary legatee, when all or any part of his legacy is withheld from him by an executor, may bring an action for an accounting against the executor for the recovery thereof. An executor, who is also residuary legatee, when all or any part of his legacy is withheld from him by his coexecutor, may bring an action for an accounting against his coexecutor for the recovery thereof.

"(b) When two or more persons hold property as joint tenants, tenants in common or coparceners, if one of them occupies, receives, uses or takes benefit of the property in greater proportion than the amount of his interest in the property, any other party and his executors or administrators may bring an action for an accounting or for use and occupation against such person and recover such sum or value as is in excess of his proportion."

[7] The plaintiff's amended complaint, containing a foreclosure count and a reformation count, the defendant's counterclaim to the plaintiff's complaint, and the defendant's partition action were matters to be tried.

[8] The plaintiff's motion stated: "All of the claims alleged in the Defendant's Counterclaim are barred by the Statutes of Limitations contained in . . . General Statutes §§ 52-576, 42a-3-118, 45a-375 and/or the Statute of Frauds contained in . . . General Statutes § 52-550."

[9] We have stated that "[u]nder *Essex Savings Bank* v. *Frimberger*, 26 Conn. App. 80, 80–81, 597 A.2d 1289 (1991), a judgment of foreclosure is not a final judgment until the trial court determines the method of foreclosure and the amount of the debt." *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 108–109 n.5, 932 A.2d 453, cert. denied, 284 Conn. 941, 937 A.2d 696 (2007). At the time the court rendered summary judgment, it did not determine the method of foreclosure or the amount of debt, and therefore it was not a final judgment.

[10] The defendant filed an opposition to the motion to dismiss the appeal on December 10, 2012.

[11] In his preliminary statement of issues, filed pursuant to Practice Book § 63-4, the defendant claimed, inter alia, that the court improperly rendered judgment for the plaintiff on the complaint.

[12] See Practice Book §§ 61-10 (b) and 60-5.

[13] In his appellate brief, the defendant argued, inter alia, that the evidence was insufficient to support a finding of reformation of the release, the plaintiff's claim violated the statute of frauds, the court used an improper standard of proof and that the court failed to address and improperly denied the defendant's special defenses.

[14] The court iterated this conclusion in its response to our articulation order.

[15] We also note that the record is unclear as to whether the evidentiary portion of the trial on the complaint had completed.

[16] See footnote 4 of this opinion.

[17] Practice Book § 10-10 provides in relevant part: "In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ."

[18] General Statutes § 52-139 provides: "(a) In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other.

"(b) No debt claimed by assignment may be set off unless the plaintiff had notice, at the commencement of the action, that the debt was due the defendant.

"(c) If it appears upon the trial that the plaintiff is indebted to the defendant, the court shall give judgment for the defendant to recover the balance due of the plaintiff with his costs, except that no judgment may be given against the plaintiff to recover the balance of a debt due only a part of the defendants."

[19] The court also briefly discussed the defense of recoupment and the statute of frauds, General Statutes § 52-550.

[20] Specifically, the court stated: "Since it is undisputed that, at the very latest, such contributions or loans were completed no later than December 2, 2002 . . . and the defendant did not file his Counterclaim until October 26, 2011, the defendant's claims for reimbursement and/or loans to joint projects are barred by the statute of limitations as a matter of law and the plaintiff's Motion for Summary Judgment must be granted."

———————————————