SARA SOCCI ET AL. *v.* JEFFREY PASIAK
(AC 32778)

Gruendel, Beach and Sheldon, Js.

Argued April 25—officially released August 21, 2012

*Miles N. Esty*, with whom, on the brief, was *Peter C. Bowman*, for the appellant (defendant).

*Daniel M. Young*, with whom, on the brief, was *Christine D. Salmon*, for the appellees (plaintiffs).

*Opinion*

SHELDON, J. The defendant, Jeffrey Pasiak, appeals from the judgment of the trial court denying his motion to set aside the verdict of a jury awarding $835,700 in

damages to the plaintiff Sara Socci[1] for injuries and losses she claimed to have suffered due to his tortious conduct toward her during an incident at his home office on May 9, 2006. The plaintiff claimed, more particularly, and the jury found, by its general verdict, that the defendant caused her injuries and losses in the subject incident by conduct constituting false imprisonment, negligence and/or intentional, reckless or negligent infliction of emotional distress. The defendant claims that the court erred in denying his motion to set aside the jury's verdict because (1) the court improperly denied his request for a jury instruction on the doctrine of superseding cause, instead improperly instructing the jury on sole proximate cause; (2) the evidence was insufficient to prove that the defendant intentionally or negligently inflicted emotional distress upon the plaintiff; (3) the amount of damages was excessive; (4) the evidence was insufficient to support an award of punitive damages; and (5) the court improperly excluded evidence of the injuries that the defendant sustained during the incident at issue in this case. We affirm the judgment of the trial court.

The following facts, as set forth in the court's memorandum of decision on the defendant's motion to set aside the verdict and which the jury reasonably could have found, and procedural history are relevant to our resolution of the issues on appeal. "The plaintiff . . . was employed by Jeffrey Pasiak Construction Service, LLC, to work from his home office at 217 Soundview Avenue [in Stamford]. The defendant . . . was the owner and operator of the business and it was his home that served as the office. On May 9, 2006, the plaintiff

---

[1] Sara Socci's husband, Kraig Socci, filed a loss of consortium claim and was awarded $32,500 in damages on that claim, which is included in the total amount of damages of $835,700. Because Kraig Socci's claim is derivative of his wife's claims, for the sake of clarity, we refer in this opinion to Sara Socci as the plaintiff.

reported to work at the house and was alone in the second floor office when a man with a gun and mask entered the office and told her to open the safe. The plaintiff did not know that there was a safe [in the defendant's home] and was not able to give this man the combination to the safe. He brought her to the bedroom area and demanded the combination to the safe. He tied her hands . . . gagged her and blindfolded her. . . . [W]hen she was unable to give the combination for the safe, he put a gun to her head and told her that he knew her family and would kill them if she did not give him the combination. She was unable to do so. During his efforts to get to the safe, [the man] cut his hand and [left] his blood . . . on [the plaintiff's] clothing. At some point, [the defendant] returned to the home/office and was attacked by [the intruder]. [The defendant] testified that his head was cut during this struggle. . . . [During] the struggle, the mask covering [the intruder's] face was pulled off and the defendant recognized [the assailant as his friend, Richard Kotulsky]. The defendant then began talking to Kotulsky and at some point inquired about 'the girl,' meaning [the plaintiff]. The defendant and Kotulsky entered the bedroom where the plaintiff was on the floor and [the defendant] picked [her] up. . . . The restraints were removed [from the plaintiff] after some disagreement as to who should remove them. [The plaintiff] was crying and hysterical about the incident. At this point, the defendant continued conversing with Kotulsky and had the plaintiff sit with them. The plaintiff asked to leave and was told by [the defendant], not Kotulsky, to stay and sit down. The defendant, after further discussion, allowed Kotulsky to leave the house. [The plaintiff then] told the defendant about the threats that Kotulsky made to her and her family. The defendant did not call police at this time. When asked if she could leave without fear of harm, [the plaintiff] was told to stay [by the

defendant]. [The defendant] did not want [the plaintiff] to call the police or discuss this incident. For many hours thereafter, the plaintiff remained with the defendant, [fearing that] . . . if she left, something [might] happen to her or [her family]. It was only after [driving the plaintiff to Greenwich and] discussing the matter with a mutual friend that the defendant allowed the plaintiff to leave. The plaintiff contacted her husband who picked up their children and returned [to their] home. . . . On the evening of these events, [the plaintiff told her husband what had happened and he] insisted that they talk to [the defendant] about contacting the police. They did and the police were contacted, came to the [defendant's] home/office and thereafter took statements at the police station. On that same night, [the defendant] talked to Kotulsky on the phone in an effort to have him go to the police. During this conversation, [the defendant] told Kotulsky that the [plaintiff] had given him up to the police. The [plaintiff and her husband] were very disturbed by this conversation. Kotulsky was eventually caught by the police and is now serving a prison sentence. As a result of the events, the plaintiff . . . [has become] very fearful and [has] lost her trust in everyone. She would not stay alone and [had] had difficulty sleeping and functioning on a daily basis. Her husband became responsible for most of the household duties as well as taking care of the children. [The plaintiff] began therapy as a result of her inability to cope and continues to see Dr. [Rebecca] Timlin-Scalera [a neuropsychologist]. She was diagnosed with post-traumatic stress disorder by both Timlin-Scalera and Dr. [Walter] Borden [a forensic psychiatrist]. She has been unable to return to work because of her fears and is still under the care of Timlin-Scalera."

By way of a six count complaint, the plaintiff filed this action against the defendant claiming false imprisonment, negligence and intentional, reckless and negligent infliction of emotional distress. The sixth count

alleges damages for loss of consortium on behalf of the plaintiff's husband. On February 23, 2010, after eleven days of trial and a little more than one day of jury deliberation, the jury returned a verdict in favor of the plaintiff, awarding her damages in the amount of $835,700, comprised of $128,200 in economic damages, $500,000 in noneconomic damages, $175,000 in punitive damages and $32,500 to her husband for loss of consortium.[2]

Thereafter, the defendant filed a "motion to set aside the verdict, motion for judgment notwithstanding the verdict and motion for remittitur" (motion to set aside). The defendant claimed in his motion to set aside that the court improperly denied his request for a jury instruction on the doctrine of superseding cause and, instead, improperly instructed the jury on sole proximate cause; that the evidence was insufficient to prove that the defendant intentionally or negligently inflicted emotional distress upon the plaintiff; that the amount of damages was excessive; that the court should have set aside the award of punitive damages; and that the court improperly excluded evidence of the injuries that the defendant sustained during the incident here at issue. In a thorough memorandum of decision filed on September 28, 2010, the court denied the defendant's motion to set aside. This appeal followed.

The defendant's claims on appeal are identical to those that he raised in his motion to set aside. "The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be

[2] The parties agreed that the only submission to the jury would be a general plaintiff's verdict form and a defendant's verdict form. There were no interrogatories provided to the jury on any of the plaintiff's claims.

given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done. . . . [T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. . . . In reviewing the action of the trial court in denying [or granting a motion] . . . to set aside the verdict, our primary concern is to determine whether the court abused its discretion. . . . The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to [the] evidence. Moreover, the trial judge can gauge the tenor of the trial, as [this court], on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury." (Internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 698–99, 41 A.3d 1013 (2012). With these principles in mind, we address the defendant's claims in turn.

I

We begin with the defendant's claims of instructional error. The defendant claims that the court erred in denying his request for an instruction on the doctrine of superseding cause and, instead, instructed the jury on sole proximate cause. We disagree.

A

We first address the defendant's claim that the court improperly denied his request for an instruction on the doctrine of superseding cause. "In determining whether the trial court improperly refused a request to charge, [w]e . . . review the evidence presented at trial in the light most favorable to supporting the . . . proposed

charge. . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Thus, a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." (Internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 607–608, 935 A.2d 975 (2007).

A superseding cause has been defined "in 2 Restatement (Second), Torts § 440 (1965) and *Doe* v. *Manheimer*, [212 Conn. 748, 759, 563 A.2d 699 (1989)], to describe any cause intervening between the time of the defendant's allegedly tortious conduct and that of the plaintiff's claimed injury which, although not disproving that the defendant's conduct proximately caused the plaintiff's claimed injury, prevented the defendant's conduct from being considered a legal cause of that injury. Such superseding causes . . . are limited to intentionally harmful acts, forces of nature, or criminal events, unforeseeable by the defendant, which intervene in the sequence of events leading from the defendant's alleged negligence to the plaintiff's alleged injury and proximately cause that injury. See *Barry* v. *Quality Steel Products, Inc.*, [263 Conn. 424, 439 n.16, 820 A.2d 258 (2003)] (confirming the continuing viability of the superseding cause doctrine in cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct)." (Internal quotation marks omitted.) Connecticut Civil Jury Instructions § 3.1-8, Notes (revised to January 1, 2008), available at http://www.jud.ct. gov/ji/civil/part3/3.1-8.htm (last visited August 3, 2012). In other words, in addition to the limitation of the doctrine of superseding cause to intentional or criminal conduct,

it also has a temporal limitation. The doctrine applies only to conduct that intervenes in or disrupts the causal connection between the alleged tortious conduct and the alleged injury; it does not apply to antecedent conduct.

Here, the defendant claims that the superseding cause that gave rise to the injuries sustained by the plaintiff was the intentional and criminal conduct of Kotulsky. Because Kotulsky's conduct occurred prior to the defendant's conduct, however, it cannot be said to have disrupted the causal connection between the defendant's conduct and the injuries sustained by the plaintiff. Thus, because the evidence could not reasonably support a finding that Kotulsky's actions superseded the defendant's tortious conduct, the court properly denied the defendant's request to charge on the doctrine of superseding cause.[3]

B

The defendant next claims that the court improperly instructed the jury on sole proximate cause. The plaintiff asserts that this claim of instructional error was not properly preserved for appeal. The defendant counters that he preserved this claim by submitting a written request to charge on the doctrine of superseding cause, and thus he was not required to voice an objection as to the instruction on sole proximate cause. In other words, the defendant claims that because he submitted a request to charge on causation, the court was on notice that he objected to any instruction on causation

---

[3] The defendant asks this court to modify the existing case law regarding superseding cause, as expressed in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 424, by expanding it to "include such unforeseeable intentional tort, force of nature, or criminal event that precedes the plaintiff's injuries that so affect the plaintiff, which would prevent any further or subsequent negligent conduct from causing the plaintiff additional harm." In so requesting, the defendant concedes that the existing law regarding superseding conduct is not applicable to the facts of the present case, and thus that the court properly declined to give such an instruction to the jury.

that was not in precise accordance with his request. We disagree.

"To preserve an exception to a jury instruction for further review under Practice Book § 16-20, a party must either submit a written request to charge or *state distinctly* the matter objected to and the ground of objection." (Emphasis added; internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 370, 33 A.3d 239 (2012). "It is our long-standing position that [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) Id., 371.

Based on our review of the transcript of the charge conference, it is clear that the court provided copies of its intended instructions to counsel for both parties and discussed the contents of those instructions in detail with counsel. The defendant did not object or take an exception to the court's instruction on sole proximate cause. In fact, he raised his objection to this instruction for the first time in his postjudgment motion to set aside. As the court noted in its memorandum of decision denying that motion, "[d]uring the course of the charging conference, the court addressed the issue and its proposal to include a charge about the sole proximate cause. The defendant contends that this charge is illogical and confusing but on two separate times when the causation charge was discussed and this charge specifically, defense counsel sat mute." Indeed, the defendant not only failed to object to the instruction on sole proximate cause, but engaged with the court in discussing the phrasing and the substance of that instruction.[4]

---

[4] During the charge conference, counsel for the defendant addressed the court's intended instruction on sole proximate cause as follows: "The first comment is that the second to the last paragraph states: 'The defendant has also filed what is called a special defense alleging that any claims for damages and/or injuries were the sole proximate cause.'

The defendant asserts that his objection to the court's sole proximate cause instruction was preserved because he filed a request to charge on superseding cause. We disagree. To credit the defendant's argument in this regard would be to discount the well settled requirement that a party distinctly state the portion of the instruction that is being challenged and the basis for that challenge. There is nothing in the record from which the trial court could have ascertained that the defendant objected to an instruction on sole proximate cause.[5] Because the defendant failed to state distinctly

"It actually, with all due respect should read: 'Alleging that plaintiff's damages and/or injuries were the sole proximate cause.' It's not the claims that are the sole proximate cause."

\* \* \*

Later in the charge conference, the court and counsel engaged in a more detailed discussion about the instruction on causation as follows:

"[The Defendant's Counsel]: Your Honor, I would just point out that when you revisit the issue of superseding or sole proximate cause, depending on what you do and where you insert it into the charge, I just want to make sure that the jury is not confused, because you're talking about the burden of proof on cause and then all of a sudden you're talking about my burden on sole proximate cause.

"The Court: And it is and it was and that's where I specifically pointed it out, because if they do find the sole proximate cause based on your special defense and I think the burden does shift, and I think that you've provided the testimony in that regard. And that's why I specifically indicated to them that if they're going to look at that, that the burden has shifted to you to show that Mr. Kotulsky was the sole proximate cause.

"[The Defendant's Counsel]: But that inquiry is separate and distinct from their initial determine as to whether the plaintiff—

"The Court: That's correct.

"[The Defendant's Counsel]: Okay, I just want to make sure, however, it's folded into the charge that the difference is clear.

"The Court: Okay.

"[The Defendant's Counsel]: That's all.

"The Court: Anything else in relation to the causation? You generally know that I am going to give them a charge regarding the sole proximate cause and independent acts."

[5] The court further pointed out that the defendant asserted at trial that the plaintiff's injuries arose solely from the actions of Kotulsky and that his conduct did not contribute to the plaintiff's injuries. Our review of the record supports the court's characterization of the defendant's theory of the case as tried to the jury.

the matter objected to and the ground of objection as required, and thus failed to alert the court to the deficiencies in the charge now advanced, his claim was not preserved for appellate review.

Alternatively, the defendant claims that the court's instruction on sole proximate cause constituted plain error. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [T]he plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Darryl W.*, supra, 303 Conn. 371–73. On the basis of the facts of this case, we cannot conclude that the court's instruction on sole proximate cause constituted plain error.

II

The defendant next claims that there was insufficient evidence to prove that he intentionally or negligently inflicted emotional distress upon the plaintiff. The jury rendered a general verdict in favor of the plaintiff. "[T]he general verdict rule is a rule of appellate jurisprudence designed to further the general principle that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which a general verdict rule operates, if any ground for the verdict is proper, the verdict must

stand; only if every ground is improper does the verdict fall. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury." (Internal quotation marks omitted.) *Gregory* v. *Gregg*, 135 Conn. App. 463, 465–66, 41 A.3d 1202 (2012).

Here, no interrogatories were submitted to the jury, and we therefore are unable to determine the basis of the jury's verdict, e.g., whether the jury found that the defendant negligently or intentionally inflicted emotional distress on the plaintiff. It is possible that the jury did not find the defendant liable under either of those theories of liability, but, rather, based its verdict on one or more of the plaintiff's other theories of liability. We are thus unable to review these claims because the record is insufficient for our review.[6]

### III

The defendant contends that the jury's award was excessive. "Because an award of damages is a matter peculiarly within the province of the trier of facts, we have held consistently that a court should exercise its authority to order a remittitur rarely—only in the most exceptional of circumstances. . . . In determining whether to order remittitur, the trial court is required to review the evidence in the light most favorable to sustaining the verdict. . . . Upon completing that review, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily

[6] Assuming arguendo that the jury did find that the defendant negligently or intentionally inflicted emotional distress upon the plaintiff, we are puzzled by the defendant's claim that he did not know or have reason to know that requiring the plaintiff to remain in his presence for several hours under the threat of harm against her and her family would cause her emotional distress.

uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions." (Citation omitted; internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, supra, 304 Conn. 705–706.

The defendant claims that "if the jury determined there was joint and concerted activity [by the defendant and Kotulsky], then [the] plaintiff's damages were limited to those damages that were proximately caused by that joint and concerted activity." The defendant argues that "the only time period during which there could have been joint and concerted intentional conduct was after the defendant arrived home, but before the assailant left. This period of time was approximately one hour long . . . ." To be sure, the jury reasonably could have determined that the plaintiff had suffered a great deal during that one hour period of time during which the defendant and Kotulsky, who had repeatedly threatened to harm the plaintiff and her family, discussed together what they were going to do with the plaintiff now that Kotulsky's identity had been discovered. There was also evidence before the jury, however, that the defendant continued to have telephone contact with Kotulsky after Kotulsky left the defendant's home specifically to discuss what the defendant planned to do with the plaintiff and whether he had released her.

The defendant also claims that the verdict was excessive because the defendant's conduct, relative to that of the assailant, was "de minimis." The plaintiff's treating mental health professional, Timlin-Scalera, testified that the plaintiff's therapy has focused to a great extent

on the conduct of the defendant due to her relationship with him, that he had betrayed her trust and that he significantly prolonged the duration of the continuing threat that was perceived by the plaintiff. On the basis of this testimony, we reject the defendant's attempt to minimize the contribution of his reprehensible conduct to the plaintiff's long-term emotional injuries.

## IV

The defendant claims that the evidence was insufficient to support an award of punitive damages because the plaintiff did not offer any evidence to prove that the defendant's conduct was outrageous or that it was animated by an evil motive or accompanied by violence. The defendant did not object, at any time prior to the filing of his motion to set aside, to submitting to the jury the option to award punitive damages. He did not argue to the trial court that an instruction on punitive damages should not be given to the jury on the basis that the evidence did not support such an instruction. Based on the evidence presented regarding the defendant's conduct, we cannot conclude that jury improperly awarded punitive damages to the plaintiff.

## V

Finally, the defendant claims that the exclusion of evidence of injuries that he sustained as a result of his physical altercation with Kotulsky on the date in question limited his ability to challenge the plaintiff's assertion that he and Kotulsky were close friends who were working in concert during the incident at issue. We disagree.

"We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . .

Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 10–11, 1 A.3d 76 (2010).

The physical altercation took place before the defendant had unmasked Kotulsky, so the defendant's relationship with Kotulsky had no bearing on the injuries he sustained during the physical altercation during which he was unaware of his assailant's identity. Additionally, the defendant himself testified that he had known Kotulsky for at least fifteen years, that he had a few pictures of Kotulsky hanging on the walls throughout his house and that he is the godfather of Kotulsky's oldest child. Thus, based upon the defendant's own testimony, he and Kotulsky had a close friendship. Because evidence of the injuries sustained by the defendant was not relevant to the issues at trial, the court properly excluded that evidence.

On the basis of the foregoing, we conclude that the court properly denied the defendant's motion to set aside.

The judgment is affirmed.

In this opinion the other judges concurred.