******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NATIONWIDE MUTUAL INSURANCE COMPANY ET
AL. *v.* JEFFREY S. PASIAK ET AL.
(AC 36922)

Keller, Prescott and West, Js.

*Argued May 19—officially released November 10, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Complex Litigation Docket,
Brazzel-Massaro, J.)

*Charles W. Fortune*, with whom were *Heather L.
McCoy* and, on the brief, *Robert D. Laurie*, for the
appellants (plaintiffs).

*David J. Robertson*, with whom, on the brief, were
*Madonna A. Sacco*, *Christopher H. Blau* and *Alyssa
M. Tornberg*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. In this declaratory judgment action, the plaintiffs, Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, appeal from the judgment of the trial court determining that, pursuant to a personal umbrella insurance policy issued by the plaintiffs in favor of the defendant Jeffrey S. Pasiak,[1] the plaintiffs had a duty to defend the defendant and to indemnify him for damages awarded against him in a tort action brought by Sara Socci, a former employee of his business, and her spouse, Kraig Socci. See *Socci* v. *Pasiak*, 137 Conn. App. 562, 49 A.3d 287, cert. denied, 307 Conn. 919, 54 A.3d 563 (2012). The dispositive issue in this appeal is whether the court properly determined that a provision in the umbrella policy excluding occurrences "arising out of the business pursuits or business property of an insured" from coverage did not bar the defendant's indemnification claim.[2] We conclude that the court improperly concluded that the business pursuits exclusion did not apply and, accordingly, reverse the judgment of the trial court and remand the case with direction to render judgment in favor of the plaintiffs.

Before turning to the relevant facts, as set forth in the trial court's memorandum of decision, and procedural history underlying this appeal, we first recount the facts as set forth in our decision in *Socci* v. *Pasiak*, supra, 137 Conn. App. 562, the underlying tort action that gave rise to this insurance coverage dispute. Sara Socci was an employee of the defendant's company, Pasiak Construction Services, LLC, and worked out of an office located on the second floor of the defendant's home. Id., 565–66. On May 9, 2006, while she was working alone at the office, a masked intruder entered the office carrying a gun and demanded that she open the safe. Id. Unaware that a safe even existed in the home, she could not provide the intruder with the safe's combination. Id., 566. The intruder led her into a bedroom, where he tied her hands, gagged her and blindfolded her. Id. At one point, he pointed a gun at her head and threatened to kill her family if she did not give him the combination. Id.

The defendant returned home during the incident and was attacked by the intruder. Id. During the ensuing struggle, the defendant pulled off the intruder's mask, revealing him to be Richard Kotulsky, a friend of the defendant. Id. The defendant began talking to Kotulsky and inquired about Sara Socci. Id. Kotulsky led the defendant to the bedroom, where the defendant found Sara Socci on the floor, crying and hysterical. Id. The defendant picked her up and removed her restraints, all the while conversing with Kotulsky. Id. She asked to leave, but the defendant told her to stay and sit down. Id. After further discussions with Kotulsky, the defendant allowed him to leave the house. Id. Sara Socci

then told the defendant about the threats that Kotulsky had made to her and her family, but the defendant would not call the police. Id. He told Sara Socci to stay with him and refused to let her call the police or to discuss the incident further. Id., 566–67. She remained with the defendant for several hours, in fear that, if she left, she or her family might be harmed. Id., 567. Only after he drove Sara Socci to Greenwich to discuss the incident with a mutual friend did he allow her to leave. Id. Eventually, the police were contacted, ultimately leading to Kotulsky's arrest and subsequent conviction. Id.

As a result of the incident, Sara Socci developed post-traumatic stress disorder, requiring extensive therapy, and was unable to return to work. Id. In March, 2008, she and her husband, Kraig Socci, filed a civil action against the defendant alleging causes of action for false imprisonment, negligence, intentional, reckless, and negligent infliction of emotional distress, and loss of consortium (Socci action). Id., 567–68. On February 23, 2010, a jury returned a general verdict in favor of the Soccis. Id., 568. It awarded Sara Socci compensatory damages of $628,200 and punitive damages of $175,000, and awarded Kraig Socci $32,500 for loss of consortium. Id.

At the time of the incident at issue in the Socci action, the defendant had three insurance policies in effect, all issued by the plaintiffs: an automobile policy, a homeowner's policy, and a personal umbrella policy. Although the plaintiffs provided the defendant with counsel in the Socci action, they notified him by letter on March 13, 2008, that they were reserving their right to contest coverage. In December, 2008, the plaintiffs filed the present action. Count one of their amended complaint sought a declaration that the plaintiffs did not have a duty to defend the defendant in the Socci action under any of his policies with the plaintiffs. Count two sought a declaration that the plaintiffs had no duty to indemnify the defendant under those policies. Count three sought a declaration that the defendant had breached his policies by failing to tender timely notice to the plaintiffs of the occurrence alleged in the Socci action and, therefore, had forfeited any right to coverage or defense.[3]

On July 28, 2009, prior to the verdict in the Socci action, the plaintiffs filed a motion for summary judgment in the declaratory judgment action seeking a determination that they did not have a duty to defend the Socci action.[4] The defendant filed a memorandum of law in opposition to the plaintiffs' motion for summary judgment and also filed a cross motion for summary judgment seeking to establish the plaintiffs' duty to defend. Following a hearing, the court, *Brazzel-Massaro, J.*, issued a memorandum of decision, concluding as follows: "[T]he court finds that the allegations of the

amended complaint fall within the acts covered by both the homeowner's policy and the umbrella policy.[5] Thus, the court finds that the plaintiff[s] [have] a duty to defend. The declaratory judgment is denied and the defendant's cross motion for summary judgment as to the duty to defend is granted.

"As a result of the court finding that there is a duty to defend and the Supreme Court decision that a duty to indemnify should not be decided on a summary judgment, and the lack of any supporting argument by the plaintiff[s] regarding the duty to indemnify, the court determines that judgment cannot enter at this time in favor of the plaintiff[s] in this declaratory judgment as to the duty to indemnify." (Footnote added.)

Regarding the plaintiffs' argument that their duty to defend was barred pursuant to the policies' business pursuits exclusions, the court found that although it was undisputed that the defendant owns and operates a construction business that employed Sara Socci to assist in office related work, the complaint did not expressly allege that Sara Socci was injured as a result of her employment. The allegations regarding the tortious conduct of the defendant related to his treatment of her after the attempted robbery of his home. According to the court, "[h]er employment or the relation thereto is not an element in the basis of her claims of his negligent and/or intentional acts." The court suggested that because there were no allegations connecting Sara Socci's work duties to the incident or the injuries claimed and "[t]here [was] no element of any regular activity of the business that is related to the events," the business pursuit exclusion did not apply.

The plaintiffs filed a second motion for summary judgment on April 18, 2011, asking the court to determine that they had no duty to indemnify the defendant for the damages awarded by the jury in the Socci action. According to the plaintiffs, the policies at issue only provided coverage for accidents, not intentional or criminal conduct or claims of emotional distress. The plaintiffs further contended that coverage for damages arising out of business pursuits or employee injuries covered under workers' compensation was expressly excluded. The court granted the plaintiffs' motion for summary judgment with respect to the homeowner's policy, concluding that coverage under that policy was limited to physical injuries and that the policy expressly excluded coverage for damages related to emotional distress not tied to a physical injury.[6] The court denied the motion, however, with respect to the plaintiffs' duty to indemnify the defendant pursuant to the umbrella policy. The court concluded that the umbrella policy contained broader coverage than the homeowner's policy with respect to emotional distress and that none of the exclusions relied on by the plaintiffs precluded indemnification as a matter of law.

On August 29, 2012, the court conducted a bench trial on the issue of whether the plaintiffs had a duty to indemnify the defendant pursuant to the terms of the umbrella policy. The parties submitted trial briefs. The court issued its memorandum of decision on April 25, 2004.

With respect to the plaintiffs' argument that indemnification was barred by the policy's business pursuits exclusion, the court stated that the "real issue" was "whether the actions of [the defendant] in response to the robbery arose out of the business pursuits for the [defendant's] business or as the defendant contends because he was trying to protect a lifelong friend." The court ultimately concluded that the exclusion did not apply because the evidence "strongly support[ed] the conclusion that [the defendant] was attempting to protect his friend" rather than further his business pursuits. After rejecting the plaintiffs' arguments that other exclusions precluded a duty to indemnify the defendant for his damages in the Socci action, the court rendered judgment in his favor. This appeal followed. Additional facts will be set forth as necessary.

The principal issue in this appeal is whether the court properly determined that the business pursuits exclusion of the defendant's umbrella policy did not preclude him from obtaining indemnification from the plaintiffs for his liability in the Socci action. The plaintiffs argue that the language of the exclusion establishes a broad causal standard, which was satisfied by the evidence introduced at trial, and that the court improperly focused on the defendant's motivations rather than on determining whether his conduct arose out of his business pursuits. The defendant responds that the court properly concluded that the exclusion did not apply because there was no causal connection between his business and his conduct.

For reasons we now explain, we conclude that, consistent with our case law interpreting identical or similar coverage exclusions, the language of the business pursuits exclusion in the defendant's umbrella policy establishes an expansive standard of causation between the incident giving rise to a claim for coverage and the insured's business pursuits. Because the facts found by the court in this case satisfied that expansive standard of causation, we agree with the plaintiffs that the court improperly concluded that the business pursuits exclusion did not apply.

We begin our analysis by setting forth the applicable standard of review. "[C]onstruction of a contract of insurance presents a question of law for the [trial] court which this court reviews de novo. . . . [T]he terms of an insurance policy are to be construed according to the general rules of contract construction. . . . The determinative question is the intent of the parties, that

is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . In evaluating the expectations of the parties, we are mindful of the principle that provisions in insurance contracts must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters and that the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . .

"If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Citations omitted; internal quotation marks omitted.) *Vermont Mutual Ins. Co.* v. *Walukiewicz*, 290 Conn. 582, 591–92, 966 A.2d 672 (2009).

"Homeowners' . . . liability policies typically exempt from coverage bodily injury or property damage arising out of or in connection with a business engaged in by an insured. People characteristically separate their business activities from their personal activities, and, therefore, business pursuits coverage is not essential for their homeowners' . . . coverage and is excluded to keep premium rates at a reasonable level." 9A L. Russ & T. Segalla, Couch on Insurance (3d Ed. 2005) § 128:12, pp.128-30 through 128-31.

With these principles in mind, we turn to the terms of the defendant's umbrella policy. The provision relevant to this appeal provides in relevant part that "[e]xcess liability and additional coverages do not apply to . . . [a]n occurrence arising out of the business pursuits or business property of an insured." "Occurrence" is defined in the policy as "an accident including continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by an insured." The term "business" is defined as "a trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time or temporary basis."

The plaintiffs argue that the defendant's coverage claim falls within the scope of this exclusion because the incident giving rise to the claim—essentially, the defendant's refusal to let Sara Socci leave his presence and her resulting injuries—arose out of the operation of his construction business. More particularly, they argue that Sara Socci would not have been attacked by Kotulsky, and consequently would not have been threatened and restrained by the defendant, if she had not been at the office of the defendant's construction

business performing her duties as an employee.

We first consider whether the defendant's operation of his construction business, and his employment of Sara Socci in support thereof, constituted "business pursuits" under his umbrella policy. Although the umbrella policy does not explain what "business pursuits" are, our Supreme Court has previously determined, in the context of interpreting an insurance policy exclusion, that the phrase "contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood. The determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry." *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 33, 688 A.2d 319 (1997). "Thus, our analysis of whether the business exclusion applies follows the two part test of continuity and profit motive, as set forth by our Supreme Court in *Pacific Indemnity Ins. Co.*" *Cambridge Mutual Fire Ins. Co.* v. *Sakon*, 132 Conn. App. 370, 377, 31 A.3d 849 (2011), cert. denied, 304 Conn. 904, 38 A.3d 1202 (2012). In the present case, the record establishes that the defendant's construction business was sufficiently continuous and profit driven to satisfy this test. The defendant does not dispute this conclusion.

We next consider whether Sara Socci's injuries arose out of the defendant's operation of his construction business. "Our [Supreme Court's] previous interpretations of insurance contracts with similar arising out of language, which originated in the motor vehicle context, are helpful to our determination of the import of the relevant endorsement. . . . In *Hogle* [v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975)], for example, [the court] observed that it is generally understood that for liability for an accident or an injury to be said to arise out of the use of an automobile for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury was connected with, had its origins in, grew out of, flowed from, or was incident to the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile. . . . Connecticut's reviewing courts subsequently have applied this definition of arising out of to insurance policies beyond the context of motor vehicle exclusions." (Citations omitted; internal quotation marks omitted.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 157–58, 61 A.3d 485 (2013).

Thus, when used in an exclusionary clause of an insurance agreement, the term "arising out of" establishes an "[expansive] standard of causation"; (internal quotation marks omitted) *New London County Mutual Ins. Co.* v. *Nantes*, 303 Conn. 737, 759, 36 A.3d 224

(2012); and must be "interpreted broadly . . . ." *Cambridge Mutual Fire Ins. Co.* v. *Sakon*, supra, 132 Conn. App. 380. "[U]se of [the phrase] does not require a direct proximate causal connection but instead merely requires some causal relation or connection." 7 S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2013) § 101:52, p. 101-96; see *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 48, 801 A.2d 752 (2002) ("[u]nder this standard of causation, it need not be shown that the incident in question was proximately caused by the vehicle for coverage to attach").

Applying this broad standard to the facts of the present case, we agree with the plaintiffs that Sara Socci's injuries arose out of the defendant's business pursuits. The trial court found, and no party disputes, that at the time that Kotulsky assaulted her, Sara Socci "was at the office location [of the defendant's construction business] performing duties for [the business] . . . ." The defendant arrived thereafter and, after initially struggling with Kotulsky, assisted him in concealing his actions by detaining Sara Socci until she agreed to refrain from contacting the police. Thus, the sine qua non of the defendant's tortious conduct was Sara Socci's presence at his business office fulfilling her responsibilities as his employee. See 9A L. Russ & T. Segalla, supra, 128:17, pp. 128-39 through 128-40 ("liabilities in connection with workplace altercations have been held to necessarily involve the insured's business pursuits and therefore fall within the business pursuits exclusion"). Stated alternatively, had Sara Socci not been at the office performing her duties as an employee of the defendant's business, there is no reason to believe that she would have been assaulted by Kotulsky and, consequently, detained by the defendant. Indeed, there was no other reason for Sara Socci's presence on the premises, and her acquiescence in obeying the defendant's commands to wait and not leave were, in part, a function of their employer-employee relationship. Accordingly, we conclude that the defendant's conduct, and Sara Socci's resulting injuries, were connected with, had their origins in, grew out of, flowed from, or were incident to the defendant's business pursuits. See *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 157–58.

The trial court's conclusion to the contrary is supported by analysis that we find unpersuasive. For instance, the court reasons at one point in its memorandum of decision that "[i]n determining whether there is a profit motive, the plaintiff must prove that the injuries alleged in the underlying action arise from the insured's business pursuits." That assertion conflates, however, the test for determining whether an insured's activities *constitute* business pursuits with the test for determining whether a particular injury *arose out of* an insured's business pursuits. As the court in *Pacific Indemnity Ins. Co.*, explained, proving that a profit

motive exists is one requirement in proving that an activity constitutes business pursuits. See *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 240 Conn. 31–33. Thus, the trial court could not logically require the plaintiffs to *first* prove that an activity arose out of the defendant's *business pursuits* in order to establish that there was a profit motive. The fact that the court appears to have done so suggests a misapplication of the business pursuits exclusion in the defendant's umbrella policy.

The court's decision also indicates that it treated the defendant's motivation or mental state as a dispositive factor in determining whether his actions and Sara Socci's injuries arose out of his business pursuits. Specifically, the court stated that "[c]ontrary to the [plaintiffs'] argument, it was not clear that [the defendant's] actions had anything to do with his business as compared to *his thoughts* of preventing his friend from going to jail." (Emphasis added.) The court further stated that the "real issue" was "whether the actions of [the defendant] in response to the robbery arose out of the business pursuits for the [defendant's] business or as the defendant contends because *he was trying to protect a lifelong friend.*" (Emphasis added.) The defendant raises the same argument on appeal, claiming that his actions "had nothing to do with [his] business and [were] entirely personal." More specifically, he argues that his actions were motivated by his desire to protect his friend and that they "had nothing to do with furthering the profits of his business."

As previously discussed, however, the phrase "arising out of" establishes an expansive standard of *causation.* Thus, whether the occurrence claimed under the umbrella policy arose out of the defendant's business pursuits is not dependent on his state of mind. It is sufficient for the plaintiffs to demonstrate that the tortious acts and resulting injuries in the underlying action were connected with, had their origins in, grew out of, flowed from, or were incident to the defendant's business pursuits to establish the necessary causal nexus. See *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 157–58. Thus, regardless of the reasons or motivations underlying the defendant's actions, including whether the actions were motivated by profit, the fact that Sara Socci's injuries would not have occurred had she not been engaged in work for the defendant's business at the time of her injuries is sufficient to satisfy that standard. We therefore conclude that the occurrence underlying the defendant's claim for indemnification arose out of his business pursuits.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiffs on count two of their amended complaint. The plaintiffs' appeal with respect to their claim regarding their duty to

defend under the umbrella policy is dismissed as moot.

In this opinion the other judges concurred.

[1] Although the operative amended complaint in this action named Sara Socci, Kraig Socci, and the defendant's business, Pasiak Construction Services, LLC, as additional party defendants, the trial court's decision is limited to the coverage issues arising from the personal umbrella insurance policy issued by the plaintiffs to Jeffrey S. Pasiak as the sole policyholder. Accordingly, we refer to him throughout this opinion as the defendant and to the remaining defendants by name.

[2] The plaintiffs also claim on appeal that the court improperly (1) failed to afford them a full and independent hearing, (2) denied them a full and fair opportunity to develop their coverage defenses during discovery and at trial, (3) made factual findings on the basis of inferences and presumptions drawn from an incomplete record, (4) failed to find that indemnification was barred pursuant to the policy's abuse exclusion, (5) failed to find that indemnification was barred pursuant to the policy's workers' compensation exclusion, and (6) determined that the defendant was entitled to indemnification for punitive damages. Because we reverse the court's judgment as to indemnification on the basis of its failure to properly apply the policy's business pursuits exclusion, we do not address these additional claims of error.

Additionally, the plaintiffs claim that the court improperly determined by way of summary judgment that they had a duty to defend the defendant in the Socci action and that, accordingly, they are entitled to reimbursement of all defense costs incurred on behalf of the defendant. We cannot reach this claim, however, because the court found that in addition to having a duty to defend arising from the umbrella policy, the plaintiffs also had a duty to defend under their homeowner's policy with the defendant. On appeal, the plaintiffs have failed to advance any argument that the court improperly determined that it had a duty to defend under the homeowner's policy, limiting its arguments challenging the duty to defend to the umbrella policy. Although the court later determined, after judgment in the Socci action, that the plaintiffs had no duty to *indemnify* the defendant under the homeowner's policy, that decision had no legal effect on the court's prior determination that the plaintiffs had a duty to *defend* under that same policy. We have often repeated, in a variety of contexts, that a party wishing to challenge a court's decision on appeal must address all grounds relied on by the court in reaching its decision or else risk the dismissal of the claim as moot. "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . [If] alternative grounds . . . unchallenged on appeal would support the trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant." (Citation omitted; internal quotation marks omitted.) *State* v. *Abushaqra*, 151 Conn. App. 319, 325, 96 A.3d 559 (2014); see also *Horenian* v. *Washington*, 128 Conn. App. 91, 98–99, 15 A.3d 1194 (2011) (dismissing portion of appeal challenging summary judgment because trial court provided two independent grounds for granting summary judgment and appellant only challenged one on appeal). The plaintiffs' failure to address their duty to defend under the homeowner's policy renders moot their claim regarding their duty to defend under the umbrella policy, and we dismiss that portion of the appeal.

[3] The plaintiffs later withdrew count three of the amended complaint on March 12, 2012. In addition to answering the complaint, the defendant filed a twelve count counterclaim against the plaintiffs alleging, inter alia, various acts of bad faith, misrepresentation, and breach of contract. The trial court granted a motion to bifurcate the trial of the declaratory judgment complaint from the counterclaim. Although the counterclaim remains pending before the trial court, the present appeal was nevertheless taken from an appealable final judgment because the court's decision following trial disposed of all remaining counts of the complaint. See Practice Book § 61-2.

[4] The record shows that the defendant was represented in the Socci action by counsel provided by the plaintiffs and by private counsel. His private counsel did not take an active role in the trial proceedings but may have advised the defendant or discussed trial strategy with the other counsel.

[5] Earlier in its decision, the court indicated that the parties had stipulated that there was no coverage available under the automobile policy.

[6] The court stated in its memorandum of decision that "[t]he homeowners policy as written clearly contemplates the coverage for a physical injury or illness as a result of the occurrence. It is obvious based upon the trial

testimony [in the Socci action] that any physical symptom or injury that Sara Socci claimed as a result of the incident was a side effect of the [post-traumatic stress disorder] or the emotional injuries she has claimed. This is the opposite of what is covered under the language of the policy. In other words, the policy clearly covers a physical injury and if, as a side effect, the injury also caused emotional distress, such as depression or other related mental impacts, it would be covered because the bodily injury would be the trigger for coverage. Here, there was no evidence or testimony that would support this claim. . . .

"Because this court has determined, based upon the trial evidence, that there is no clear claim for bodily injury or personal injury that was related directly or indirectly to the physical or mental abuse to trigger a possibility of coverage, the exclusion for damages of emotional distress is applicable and precludes coverage."

---